IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABB POWER T&D COMPANY, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 97-417-MMS |
| | : | |
| LANDIS & GYR UTILITIES SERVICES | : | |
| HOLDINGS, INC., LANDIS & GYR | : | **REDACTED** |
| UTILITIES SERVICES, INC. and | : | **PUBLIC VERSION** |
| ELECTROWATT AG, | : | |
| | : | |
| Defendant. | : | |

**ELSTER ELECTRICITY LLC'S**
**MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Elster Electricity LLC ("Elster") hereby moves to enforce the audit provisions of a 1998

Settlement Agreement ("Agreement") (Ex. A) entered in settlement of a patent infringement

action ("Action"). The Action was pending before now retired Honorable Murray Schwartz, and

the Agreement was entered into with the assistance of Magistrate Judge Thynge. This Court

retained jurisdiction to enforce the Agreement (Ex. B).

The original parties to the Action and Agreement were ABB Power T&D Company. Inc.,

the patent owner/plaintiff, and Landis&Gyr Utilities Services, Inc. et al., the defendants. ABB is

now known as Elster Electricity LLC and Landis&Gyr is now known as Landis+Gyr, Inc.

("Landis"). Elster is the successor to the named plaintiff in the Action. This motion is

necessitated by Landis' refusal to abide by the audit provisions of the Agreement. Landis' full

cooperation in the conduct of the audit would have revealed whether Landis is also in breach of

the royalty payment provisions of the Agreement. Elster seeks a 120 day discovery period to

investigate those facts that it should have been permitted to discover through the audit provisions

of the Agreement. Elster may request a hearing on this matter following the conclusion of the discovery period.

## I.    STATEMENT OF FACTS

The Agreement includes a Patent Cross License Agreement (the "PCLA") under which Landis agrees to pay to Elster royalties on sales of products that embody any one of six sets of features described in the PCLA (Ex. C, ¶¶ 1.6(a)-(f)). The PCLA permits Elster to audit Landis' records and documentation to verify the accuracy of royalties due Elster (Ex. C, ¶ 4.5). The PCLA further requires that any litigation brought based on a failure of Landis to pay royalties must be commenced within two years of the date of first sale of the alleged royalty bearing product (Ex. C, ¶ 11.2). The PCLA specifies that the parties shall "engage in good faith discussions to resolve the dispute amicably and without resort to litigation" before commencing such litigation (Ex. C, ¶ 11.1).

On March 9, 2001, Elster began an audit of Landis's records to determine whether all royalties had been paid (Ex. D). The audit revealed that Landis had not paid royalties on all of its "S4" and "ZMC" meter products ("Products"), even though they all bear the same trade designation. In July 2002, in an attempt to resolve the matter without resort to litigation, the parties agreed that Landis would provide an "initial statement" to Elster explaining why royalties had not been paid on those products (Ex. E). The parties further agreed that they would attempt to resolve any disputes arising from the initial statement within a 210 day period following its receipt ("the negotiation period"). In addition, Landis agreed that the PCLA's two-year limitation on commencement of litigation would be tolled until the expiration of the negotiation period. A hiatus ensued, and Landis did not provide the initial statement until January 26, 2005 (Ex. F).

The technical information provided in Landis's initial statement led Elster to conclude that the Products were indeed royalty bearing and that Landis had breached the royalty payment provisions of the Agreement.  On July 21, 2005, Elster put Landis on notice of the breach (Ex. G).  Following an agreement to extend the 210 day negotiation period, Elster provided Landis with additional details supporting its charge of breach on October 18, 2005 (Ex. H).  Landis first responded that Elster had mischaracterized Landis' initial statement.  Then, on November 28, Landis responded with additional technical information that it had not previously supplied (Ex. I).  By this juncture, the nature of the technical information was such that Elster required a technical consultant to assist it in its evaluation, and the parties agreed to extend the negotiation period to January 12, 2006.  After Elster located and retained a consultant, on January 6, 2006, Elster wrote to Landis and requested (i) additional technical information and (ii) permission to show Landis' confidential technical information to its consultant (Ex. J).  On January 9, 2006, Landis authorized disclosure of its information to Elster's consultant but failed to supply the additional information that Elster had requested.  With the January 12 expiration of the extended negotiation period looming, Elster and Landis agreed to another, one week extension of the negotiation period to January 19, 2006 (Ex. K).  Landis finally supplied the additional information requested by Elster, after the close of business on January 17 and just two days before the January 19 expiration of the extended negotiation period (Ex. L).  Elster's request for an additional extension of the negotiation period, to provide the additional information to its consultant and to allow the consultant time to consider it, was flatly denied by Landis (Ex. M).  Landis stated that it is "confident that [Elster has] more than enough information to conclude the correctness of [Landis'] position with respect to the license."

Landis' refusal to allow Elster's consultant to evaluate the new information that it just recently provided has frustrated Elster's efforts to exercise its audit rights and its attempt to resolve this matter in good faith. Elster has now been forced to file this motion to take measures to determine whether Landis owes Elster additional royalties. In fact, Landis' initial statement to Elster did indicate that the Products on which Landis refuses to pay royalties are royalty bearing.

## II. ARGUMENT

Paragraph 4.5 of the PCLA provides Elster the right to conduct an audit of Landis' records and documentation "to verify the royalties due under this Agreement." Paragraph 11.1 of the PCLA further provides that "both parties shall engage in good faith discussions in an effort to amicably resolve any dispute prior to commencement of litigation thereon." Landis has frustrated Elster's efforts to complete its audit of the royalty payments due under the PCLA. Elster, on the other hand, has tolerated Landis' conduct over the nearly four year period of this dispute. It has now become clear that Landis is trying to stymie Elster's efforts to learn whether the Products are royalty bearing.

Paragraph 1.6(b) of the PCLA requires that Landis pay royalties on the following:

> [any] programmable meter for electronically measuring electrical energy used by a residential, commercial or industrial customer, the meter comprising processing circuitry receiving voltage and current signals corresponding to at least two phase service, the processing circuitry comprising plural analog to digital (A/D) converters, each A/D converter having . . . a digital resolution of 21 bits (20 bits plus sign).

Exhibit C, ¶ 1.6(b). In its initial statement concerning the Products, Landis stated:

REDACTED

Exhibit F §§ II.B and II.D.

4

This information states that


REDACTED


Even if true, Elster does not believe this changes the fact that the A/D converter has REDACTED     If Elster is right, the Products are royalty bearing.  However, Landis will not allow Elster to get to the bottom of the issue.  For example, Landis refused to provide source code to Elster's lawyers that would enable it, working with its consultant, to determine whether the products fall under the PCLA (Ex. N, Item 2).  Landis has made it impossible for Elster to evaluate the subsequent information that Landis has provided and to ask follow-up questions.

It is now apparent that Landis must be compelled to cooperate and that only Court-ordered discovery will result in the information Elster requires to assess whether the Products are royalty bearing.  It bears repeating that Landis' initial statement clearly reveals that they are, but Landis' subsequent characterizations have confused the issue.

In light of the foregoing, Elster requests an order granting a 120 day period during which it can propound written discovery and, if needed, take depositions.  At the conclusion of the discovery period, Elster may request a hearing to receive evidence for the purpose of determining whether Landis has breached the royalty provisions of the PCLA.

## III.   CONCLUSION

For all of the foregoing reasons, Elster requests the relief set forth in the proposed order accompanying this motion.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Julia Heaney (#3052)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorneys for Movant*
*Eslter Electricity LLC*

OF COUNSEL:

Steven J. Rocci
Steven B. Samuels
Vincent J. Roccia
WOODCOCK WASHBURN LLP
One Liberty Place, 46th Floor
Philadelphia, PA  19103

Original Filing:  January 20, 2006

Redacted Filing:  February 9, 2006

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABB POWER T&D COMPANY, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 97-417-MMS |
| | : | |
| LANDIS & GYR UTILITIES SERVICES | : | |
| HOLDINGS, INC., LANDIS & GYR | : | |
| UTILITIES SERVICES, INC. and | : | |
| ELECTROWATT AG, | : | |
| | : | |
| Defendant. | : | |

## [PROPOSED] ORDER

Having considered the motion of Elster Electricity LLC ("Elster") to enforce the audit provisions of the Settlement Agreement entered in this matter, it is hereby ORDERED:

Elster shall be entitled to take discovery concerning the structure, function and operation of Landis+Gyr's S4 and ZMC meters for the purpose of allowing Elster to make a determination as to whether the meters are covered by Paragraph 1.6 (b) of the Patent Cross License Agreement ("PCLA") that forms a part of the Settlement Agreement.

The discovery period shall commence upon the entry date of this Order and shall conclude 120 days thereafter.

Within 15 days of the conclusion of the discovery period, Elster may request a hearing to receive evidence for the purpose of determining whether Landis+Gyr has breached the royalty payment provisions of the PCLA.

SO ORDERED this _____ day of _____, 2006.

_____

J.

## <u>RULE 7.1.1 CERTIFICATE</u>

Pursuant to D. Del. L.R. 7.1.1, this is to certify that counsel for Elster has discussed the subject matter of this motion with counsel for Landis+Gyr, and has not been able to reach agreement on the matters therein.


*/s/ Julia Heaney (#3052)*
Julia Heaney

# EXHIBIT A

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is hereby made and effective as of the 1st day of October, 1998 between ABB Power T&D Company Inc. ("ABB") and Landis & Gyr Utilities Services, Inc. ("L&GUS"), Landis & Gyr Utilities Services Holdings, Inc. ("L&GUSH"), Electrowatt AG ("Electrowatt"), Siemens Metering Ltd. ("SML") (which includes the former metering business of Landis & Gyr (Europe) AG) and Siemens Power Transmission and Distribution LLC ("ST&D") (which includes the former metering business of L&GUS).

WHEREAS, ABB filed a lawsuit and amendments thereto in the United States District Court for the District of Delaware (the "District Court") entitled ABB Power T&D Company, Inc. v. Landis & Gyr Utilities Services, Inc., et al., Case No. 97-417 MMS (the "Litigation").

WHEREAS, ABB alleged in the Litigation infringement of United States Patent Nos. 5,537,333; 5,544,089; 5,548,527; 5,555,508; 5,621,629; 5,631,843; and 5,537,029;

WHEREAS, counterclaims and amendments thereto (the "Counterclaim") were filed alleging that ABB infringed United States Patent No. 4,902,964 in the Litigation;

NOW, THEREFORE, in consideration of the obligations and promises contained herein, the adequacy and receipt of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    ABB, SML and ST&D will dismiss the Litigation and Counterclaim with prejudice pursuant to the form of order attached hereto as Exhibit A.

2.    ABB, L&GUS, L&GUSH and Electrowatt will dismiss the Litigation and Counterclaim with prejudice pursuant to the form of order attached hereto as Exhibit A.

1

3.     ABB, SML, ST&D, L&GUS, L&GUSH and Electrowatt will abide by the terms of this Agreement and the Patent Cross-License Agreement, attached hereto as Exhibit B, which is executed contemporaneously with this Agreement and incorporated by reference herein.

4.     (a)  The parties to this Agreement, for themselves and for their directors, officers, partners, employees, servants, agents, attorneys to this Agreement, subrogors, subrogees, predecessors, successors, parents, subsidiaries and affiliates (collectively, the "Releasors"), do hereby forever release and discharge each of the other Releasors and all of their direct and indirect customers from any and all actions and causes of action, suits, debts, obligations, controversies, agreements, promises, judgments, damages, liens, claims and demands whatsoever, in law or in equity, which any of the Releasors have had, or may now have, related to the allegations in the Litigation,  Counterclaim and any causes of action related to the ABB Licensed Patents and L&G/Siemens Licensed Patents as defined in the Patent Cross-License Agreement.  However, no release or discharge is given or made with respect to this Agreement or the Patent Cross-License Agreement contemporaneously executed herewith.

(b)  The Releasors intend the above release to be effective regardless of whether the basis for any claim or cause of action released is now known to or anticipated by the parties, and shall be effective even if facts relevant to this Agreement are found, after the effective date of this Agreement, to be different from the facts believed or assumed to be true as of the effective date of this Agreement. The Releasors acknowledge that they are each aware of California Civil Code Section 1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

2

The Releasors agree to expressly waive any rights either of them may have under this Code section or under federal, state or common law statutes or judicial decisions of similar nature, and knowingly and voluntarily waive such unknown claims.

     5.    This Agreement shall he deemed severable, and the invalidity or unenforceability of any term or provision hereof shall not affect the validity or enforceability of this Agreement or of any other term or provision hereof.

     6.    (a)  This Agreement shall be binding upon and inure to the benefit of the parties, their successors in interest and assigns.

         (b)  This Agreement and the Patent Cross-License Agreement executed in connection herewith contain the entire agreement between the parties hereto with respect to the subject matter hereof and thereof and supersedes all prior agreements and undertakings between the parties relating to the subject matter hereof and thereof.

     7.    This Agreement and the Patent Cross-License Agreement shall not be modified except in writing by the parties.

     8.    The parties to this Agreement acknowledge that they have read this Agreement, have consulted legal counsel as to its effect, and have received advice of counsel as to its effect.

     9.    The parties warrant that they have made no assignment, transfer, conveyance or other disposition of any of the causes of action set forth in the Litigation.

     10.    This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

3

11.     The parties agree and consent to the continued jurisdiction of the District Court over the parties and this matter for the purpose of enforcing this Agreement and the Patent Cross-License Agreement.

12.     This Agreement may be signed in multiple originals. All individuals signing for a party represent and warrant that they have actual authority to execute this Agreement on behalf of that party.

13.     Each of the parties shall bear their own costs and attorney fees.

14.     This Agreement may be executed by a facsimile signature in two or more counterparts, each of which shall constitute an original. Provided, however, if one or more signatures are exchanged in facsimile, the original signature pages shall be exchanged within a reasonable time thereafter.

IN WITNESS WHEREOF, the undersigned parties have executed this agreement.

ABB POWER T&D COMPANY INC.

By:_____

Date:_____

Title:_____

4

**LANDIS & GYR UTILITIES SERVICES, INC.**

By:_____

Date:_____

Title:_____


**LANDIS & GYR UTILITIES SERVICES HOLDINGS, INC.**

By:_____

Date:_____

Title:_____


**ELECTROWATT AG**

By:_____

Date:_____

Title:_____

5

SIEMENS METERING LTD. (which includes the former metering business of Landis & Gyr (Europe) AG)

By:_____

Date:_____

Title:_____


SIEMENS POWER TRANSMISSION & DISTRIBUTION, LLC (which includes the former metering business of Landis & Gyr Utilities Services, Inc.)

By:_____

Date:_____

Title:_____

6

Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABB POWER T&D COMPANY INC. | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LANDIS & GYR UTILITIES SERVICES | : | Civil Action No. 97-417MMS |
| HOLDINGS, INC., LANDIS & GYR | : | |
| UTILITIES SERVICES, INC. and | : | |
| ELECTROWATT AG, | : | |
| | : | |
| Defendants. | : | |

### Order of Dismissal

Pursuant to Federal Rule of Civil Procedure 41, the claims of Siemens Metering Ltd. ("SML") and Siemens Power Transmission and Distribution LLC ("ST&D") against ABB Power T&D Company Inc. ("ABB") and the claims of ABB against SML and ST&D are hereby dismissed with prejudice, according to the Settlement Agreement between the parties. The claims of Landis & Gyr Utilities Services Holdings, Inc. ("L&GUSH"), Landis & Gyr Utilities Services, Inc. ("L&GUS") and Electrowatt AG ("Electrowatt") against ABB and the claims of ABB against L&GUSH, L&GUS and Electrowatt are hereby dismissed without prejudice, according to the Settlement Agreement between the parties.

Each party to bear its own costs, expenses and attorney fees.

This Court retains jurisdiction over the parties and the subject matter for the purpose of enforcing the Settlement Agreement and the Patent Cross-License Agreement executed in connection therewith, both of which are expressly incorporated herein by reference.

Dated: _____        _____
                                        United States District Court Judge

11.    The parties agree and consent to the continued jurisdiction of the District Court over the parties and this matter for the purpose of enforcing this Agreement and the Patent Cross-License Agreement.

12.    This Agreement may be signed in multiple originals. All individuals signing for a party represent and warrant that they have actual authority to execute this Agreement on behalf of that party.

13.    Each of the parties shall bear their own costs and attorney fees.

14.    This Agreement may be executed by a facsimile signature in two or more counterparts, each of which shall constitute an original. Provided, however, if one or more signatures are exchanged in facsimile, the original signature pages shall be exchanged within a reasonable time thereafter.


IN WITNESS WHEREOF, the undersigned parties have executed this agreement.

ABB POWER T&D COMPANY INC.

By: _____

Date: _Oct. 14, 1998_____

Title: _Executive Vice President_____

4

LANDIS & GYR UTILITIES SERVICES, INC.

By: _____

Date: _____ 10-14-98 _____

Title: _Presdent & CEO_ _____


LANDIS & GYR UTILITIES SERVICES HOLDINGS, INC.

By: _____

Date: _____ 10-14-98 _____

Title: _Presdent & CEO_ _____


ELECTROWATT AG

By: _____

Date: _____

Title: _____


5

LANDIS & GYR UTILITIES SERVICES, INC.

By: _____

Date: _____

Title: _____


LANDIS & GYR UTILITIES SERVICES HOLDINGS, INC.

By: _____

Date: _____

Title: _____


ELECTROWATT AG

By: _____

Date: 20.10.98        20.10.98

Title: LEGAL COUNSEL    Legal Counsel

5

SIEMENS METERING LTD. (which includes the former metering business of Landis & Gyr (Europe) AG)

By: _____

Date: 20.10.98        20.10.98

Title: VP Digital Services.    President

SIEMENS POWER TRANSMISSION & DISTRIBUTION, LLC (which includes the former metering business of Landis & Gyr Utilities Services, Inc.)

By: _____

Date: _____

Title: _____

6

SIEMENS METERING LTD. (which includes the former metering business of Landis & Gyr (Europe) AG)

By: _____

Date: _____

Title: _____


SIEMENS POWER TRANSMISSION & DISTRIBUTION, LLC (which includes the former metering business of Landis & Gyr Utilities Services, Inc.)

By: _____

Date: _____ 10-14-98 _____

Title: _PRESIDENT & CEO._

6

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABB POWER T&D COMPANY, INC. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 97-417-MMS |
| | § | |
| LANDIS & GYR UTILITIES | § | |
| SERVICES HOLDINGS, INC., | § | |
| LANDIS & GYR UTILITIES | § | |
| SERVICES, INC. and | § | |
| ELECTROWATT AG, | § | |
| | § | |
| Defendants. | § | |

## STIPULATION AND ORDER OF DISMISSAL

Pursuant to Federal Rule of Civil Procedure 41, the claims of Siemens Metering Ltd. ("SML") and Siemens Power Transmission and Distribution LLC ("ST&D") against ABB Power T&D Company Inc. ("ABB") and the claims of ABB against SML and ST&D are hereby dismissed with prejudice, according to the Settlement Agreement between the parties. The claims of Landis & Gyr Utilities Services Holdings, Inc. ("L&GUSH"), Landis & Gyr Utilities Services, Inc. ("L&GUS") and Electrowatt AG ("Electrowatt") against ABB and the claims of ABB against L&GUSH, L&GUS and Electrowatt are hereby dismissed without prejudice, according to the Settlement Agreement between the parties.

Each party to bear its own costs, expenses and attorney fees.

This Court retains jurisdiction over the parties and the subject matter for the purpose of enforcing the Settlement Agreement and the Patent Cross-License Agreement

FROM MNA&T

executed in connection therewith, both of which are expressly incorporated herein by

reference.

MORRIS, NICHOLS, ARSHT &
TUNNELL

*Karen Jacobs Louden*

Donald F. Parsons, Jr. (#437)
Karen Jacobs Louden (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Counsel For Plaintiff*
*ABB POWER T&D COMPANY*

POTTER ANDERSON & CORROON

William J. Marsden, Jr. (#2247)
Hercules Plaza
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000

*Counsel For Defendants*
*LANDIS & GYR UTILITIES SERVICES*
*HOLDINGS, INC., LANDIS & GYR*
*UTILITIES SERVICES, INC.,*
*ELECTROWATT AG, SIEMENS METERING LTD.*
*and SIEMENS POWER TRANSMISSION AND*
*DISTRIBUTION LLC*

SO ORDERED this 21st day of ___Oct.___, 1998.

United States District Court Judge

346152v1

# EXHIBIT C

## PATENT CROSS-LICENSE AGREEMENT

This Patent Cross-License Agreement ("Agreement") is entered into as of October 1, 1998, by and between Siemens Metering Ltd. (which includes the former metering business of Landis & Gyr (Europe) AG) and Siemens Power Transmission & Distribution LLC (which includes the former metering business of Landis & Gyr Utilities Services, Inc.), a Delaware limited liability company (collectively "Siemens"), and ABB Power T&D Company Inc. ("ABB"), a Delaware corporation.

WHEREAS, Siemens and ABB desire to grant and obtain licenses under various patents as defined herein on the terms and conditions specified herein:

NOW THEREFORE, the parties hereto agree as follows:

1.    Definitions

    1.1    ABB Licensed Patents. "ABB Licensed Patents" shall mean the following patents: United States Patent Nos. 5,537,333; 5,544,089; 5,548,527; 5,555,508; 5,621,629; 5,631,843; 4,654,588; 4,852,030; 5,537,029; and, 5,457,621 and all continuations, divisionals, reissues and reexams of these patents or resulting from any common parent applications of these patents.

    1.2    L&G/Siemens Licensed Patents. "L&G/Siemens Licensed Patents" shall mean the following patents: U.S. Patent Nos. 4,902,964; 4,987,363; and 5,262,715; and all continuations, divisionals, reissues and reexams of these patents or resulting from any common parent applications of these patents; and EPO Patent No. 524,378 and German Patent No. 94 14 256.4 U1 and all continuations, divisionals, extensions and renewals thereof.

1

1.3    (a)    Net Sales Price. "Net Sales Price" means the gross sales price less the following items to the extent to which they are included in such gross sales or lease price: (i) trade and quantity discounts (but not cash discounts, advertising allowances, or commissions paid to any salesperson, sales agent or manufacturer's representative); (ii) transportation and insurance costs on shipments to the customer; and (iii) sales, use and other similar taxes.

       (b)    Net Lease Price. "Net Lease Price" means the cumulative gross lease price payments less: (i) trade and quantity discounts (but not cash discounts, advertising allowances, or commissions paid to any salesperson, sales agent or manufacturer's representative); (ii) transportation and insurance costs on shipments to the customer; and (iii) sales, use and other similar taxes.

1.4    Running Royalty Period. "Running Royalty Period" shall mean the time period commencing July 15, 2000 and continuing through the end of the Term of this Agreement as defined in Section 3.1.

1.5    Licensed Products. "Licensed Products" means electric meters falling within the scope of the ABB Licensed Patents or kits or components specifically designed for use therewith.

1.6    Specific Licensed Product(s). "Specific Licensed Product(s)" means electric energy meters or kits or components specifically designed for use in such electric energy meters embodying one or more of the following features:

       (a)  A programmable meter for electronically measuring electrical energy used by a residential, commercial or industrial customer, the meter comprising processing circuitry receiving voltage and current signals corresponding to at least two phase service, the processing circuitry

2

comprising 3 sigma delta ($\Sigma\Delta$) analog to digital (A/D) converters, a first $\Sigma\Delta$ A/D converter receiving only the voltage signals corresponding to each phase, a second $\Sigma\Delta$ A/D converter receiving only the current signals corresponding to each phase, and a third $\Sigma\Delta$ A/D converter used to simultaneously sample a voltage reference for a given phase or to simultaneously sample a phase different from the given phase for non-Blondel compliant applications.

(b)  A programmable meter for electronically measuring electrical energy used by a residential, commercial or industrial customer, the meter comprising processing circuitry receiving voltage and current signals corresponding to at least two phase service, the processing circuitry comprising plural analog to digital (A/D) converters, each A/D converter having a conversion rate of 7200 Hz (+/- 10%), an A/D channel having a conversion rate of 2400 Hz (+/- 10%) or a digital resolution of 21 bits (20 bits plus sign).

(c)  A meter for electronically measuring electrical energy used by a residential, commercial or industrial customer, the meter comprising first and second processors,  the first processor receiving voltage and current inputs and determining energy based thereon and having an associated memory from which a program code is executed (program code being defined as DSP code resident in the meter that can be executed by the first processor during metering operations), the meter also comprising one or both of a communications medium for communicating externally with one of the processors and/or a non-volatile memory, the program code for the first processor being alterable (meaning providing a different meter functionality, e.g., ABB "Alpha Keys" and form changes) in the field (i.e., not in the factory) via either the communications medium or from program code stored

3

in the non-volatile memory, but specifically not including transferring program code from a non-volatile memory to executable code space (RAM) at initialization, providing that the program code is the same as at first initialization.

(d)  A programmable meter comprising a first and second processor for electronically measuring electrical energy used by a residential, commercial or industrial customer, the meter having an interface to provide optional functionality to the meter, where the interface allows direct access to the information generated by the first processor in the meter, (e.g., #38, Figure 1, U.S. Patent No. 5,555,508) wherein direct access does not include an interface connected to the second processor as long as the interface only accesses information after it is processed by the second processor.

(e)  A meter for measuring electrical energy having a power supply capable of accepting a range of input voltages and providing a substantially regulated output voltage independent of the input voltage, the power supply comprising a transformer and a switching regulator circuit operatively coupled to a primary winding of the transformer, there being a voltage clamping circuit receiving the input voltage, the voltage clamping circuit being operative to limit the voltage applied to the primary winding or the switching regulator circuit, but specifically not including a meter with a power supply using a voltage clamping circuit that is designed to regulate the voltage applied to the primary winding or switching regulator circuit only when transient over-voltages are present on the line, such as an MOV or surge protection circuit.

(f)  A meter for electronically measuring electrical energy having a display comprising three annunciators that are each selectively actuable to a visible

4

state and being arranged in a row, the first and the third annunciators in the row being arrow-shaped and being pulsed to the visible state at a rate corresponding to a rate of energy consumption, the second annunciator being pulsed at a rate corresponding to a rate of equivalent disk rotation.

2.    Grant

2.1    ABB hereby grants, Siemens and its subsidiaries and affiliates, only as long as they are more than 50% owned by Siemens or a parent thereof, a nonexclusive license, with no right to sublicense, to make, have made, import, use, offer to sell, sell or lease Licensed Products and Specific Licensed Products.

2.2    No rights, express or implied, are granted under any foreign patents, foreign utility models, or foreign petty patents corresponding to any of the ABB Licensed Patents.

2.3    Siemens hereby grants ABB and its subsidiaries and affiliates, only as long as they are more than 50% owned by ABB or a parent thereof, a nonexclusive license, with no right to sublicense, to make, have made, import, use, offer to sell, sell or lease electric power meters under the L&G/Siemens Licensed Patents.

3.    Term

3.1    The term ("Term") of this Agreement shall commence at the final execution hereof and continue through the expiration of the term of the last-to-expire of the ABB Licensed Patents.

5

4.    Compensation

4.1    In consideration of the license granted herein to Siemens by ABB, Siemens shall make a single non-refundable payment to ABB in the amount of two million dollars (USD) ($2,000,000.00) within five(5) business days of the date of final execution of this Agreement.

4.2    In further consideration of the license granted herein to Siemens by ABB, Siemens shall pay a running royalty to ABB at the rate of 5% of Net Sales or Lease Price of Specific Licensed Products manufactured, sold or leased by Siemens in the United States during the Running Royalty Period. The aforesaid running royalty shall be due and payable within thirty (30) days after the end of each calendar quarter and such payment shall be accompanied by a written royalty report setting forth the number of Specific Licensed Product(s) which have been sold or leased during the preceding quarter, the gross sales price, Net Sales Price of such products and the royalties due thereon or the gross lease price, Net Lease Price and the royalties due thereon.

4.3    In consideration of the license granted herein to ABB by Siemens, ABB shall grant Siemens a 2.5% credit against the 5% running royalty described in Section 4.2 throughout the Running Royalty Period. The net result of this credit is a 2.5% royalty on Net Sales Price or Net Lease Price of any Specific Licensed Products subject to royalty during the Running Royalty Period.

4.4    The parties agree that this net royalty rate of 2.5% shall apply throughout the Running Royalty Period regardless of any judicial or administrative determination that any of the patents licensed hereunder are invalid, unenforceable or not patentable.

6

4.5     During the Running Royalty Period, ABB shall have the right, upon reasonable notice and at its own expense, to have an independent third party acceptable to the parties conduct an annual audit of the sales records, royalty reports and like documentation of Siemens to verify the royalties due under this Agreement but this information shall be used for no other purpose and ABB shall maintain the confidentiality of this information.

4.6     Siemens agrees to keep accurate records and books of account covering all sales or leases made of Specific Licensed Product(s), all orders received for Specific Licensed Product(s), all discounts, transportation charges and taxes subtracted in determining the Net Sales Price or the Net Lease Price, and all Specific Licensed Product(s) in inventory at the close of each calendar quarter. Such records and books of account shall be retained for six years following the period to which they apply.

5.     Assignment

5.1     This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties to this Agreement. This Agreement shall not be assignable by ABB or Siemens, except that ABB and Siemens may assign at any time all of their rights and obligations under this Agreement to any of their parents or wholly-owned subsidiaries, provided, that the parties shall remain liable for the performance of all obligations under this Agreement.

6.     Warranties and Representations

6.1     ABB warrants and represents that it has the legal right to grant the license set forth in Section 2.1. Siemens warrants and represents that it has the legal right to grant the license set forth in Section 2.3.

7

6.2     Preclusion of Patent Challenges

The parties agree that they will not seek to invalidate or render unenforceable the patents licensed herein, and the parties further agree that they will not take any action that would serve to encourage, finance, contribute or promote any third party or person to challenge or otherwise seek to invalidate or render unenforceable the patents licensed herein. However, nothing in this provision shall limit a party's right to rely upon prior art or prior activities for the purposes of construing the licensed patents or the terms of this Agreement.

7.     Applicable Law and Jurisdiction

7.1     This Agreement and performance hereunder shall be governed by and construed in accordance with the laws of the state of Delaware (without giving effect to the conflict of laws principles thereof). Any and all proceedings relating to the subject matter hereof shall be maintained in the United States District Court for the District of Delaware ("District Court"), which court shall have exclusive jurisdiction for such purpose. ABB and Siemens hereby consent to the continued personal and subject matter jurisdiction of the District Court regarding the enforcement of this Agreement and the Settlement Agreement executed in connection therewith. ABB agrees that Siemens AG has not agreed to or consented to and is not subject to the jurisdiction of the federal, state or local courts of the United States of America for any purpose, including the enforcement of this Agreement and/or the Settlement Agreement.

8.     Enforceability

8.1     If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions

8

shall in no way be affected or impaired thereby. If any provision is illegal, invalid or unenforceable, the parties shall, to the extent lawful and practicable, use reasonable efforts to enter into arrangements to reinstate the intended benefits of such provisions.

9.    Entire  Agreement

9.1    This Agreement and the Settlement Agreement executed in connection herewith contain the entire agreement between the parties hereto with respect to the subject matter hereof and thereof and supersedes all prior agreements and undertakings between the parties relating to the subject matter hereof and thereof.

10.    Amendments and Waivers

10.1    All amendments and other modifications hereof shall be in writing and signed by each of the parties hereto. The failure of either party to exercise in any respect any right provided for herein shall not be deemed a waiver of any right hereunder.

11.    Litigation

11.1    The parties agree that notice of any alleged breach of this Agreement shall be provided to the allegedly breaching party at least thirty (30) days prior to the filing of any litigation in connection therewith. The parties further agree that the allegedly breaching party shall have thirty (30) days following receipt of such notice to cure any such alleged breach, and that both parties shall engage in good faith discussions in an effort to amicably resolve any dispute prior to commencement of litigation thereon.

9

11.2   In regard to any claim by ABB concerning royalties due under this Agreement, ABB shall initiate any litigation against Siemens on such claim within two (2) years of the first sale within the Running Royalty Period of the product that is the subject of the royalty dispute. In any such litigation, (i) the prevailing party shall receive its reasonable attorneys' fees; and (ii) ABB shall be entitled to pre-judgment interest on the back royalties (if any) found to be due ABB in the amount of prime plus 5% in the event ABB prevails.

11.3   In regard to any other claim of breach of this Agreement, the party initiating such litigation shall do so within two (2) years of the occurrence of the alleged breach unless such breach is fraudulently concealed.

12.   Remedies

12.1   ABB's sole and exclusive remedy for claims pertaining to royalties due hereunder is a suit for recovery of the monetary amounts specified in Section 11.2.

12.2   ABB's and Siemens' sole and exclusive remedy for any other alleged breach of this Agreement shall be a suit for recovery of such actual damages as are caused by such breach.

12.3   Nothing in this Agreement shall preclude the District Court from awarding any just and proper relief if it finds that either party acted in bad faith in connection with any dispute over the terms and conditions of this Agreement or the Settlement Agreement.

10

13.    Termination

    13.1    This Agreement is not subject to termination except by written consent of both
        parties, and the licenses granted hereunder are irrevocable.


14.    Notices and Reports

All notices and reports required or permitted to be given by and between the parties under

the provisions of this Agreement, shall be in writing and shall for all purposes be deemed

to be fully given and received if sent by Registered Mail, postage prepaid, to the respective

parties of the addresses:

        To ABB:
            Dr. John G. Reckleff
            Vice President
            ABB Power T&D Company Inc.
            201 South Rogers Lane
            Raleigh, NC 27610-2107

        To Siemens:
            John W. Shumar
            Siemens Power Transmission & Distribution, LLC
            100 Forsyth Hall Drive, Suite A
            Charlotte, NC 28273
            P.O. Box 240451
            Charlotte, NC 28224-0451

            Jan van Dokkum
            Siemens Power Transmission & Distribution, LLC
            7000 Siemens Road
            Wendell, NC 27591
            P.O. Box 29503
            Raleigh, NC 27626-0503

            Dr. Johannes Milde
            Siemens Metering Ltd.
            Feldstrasse 1
            CH-6301  Zug

IN WITNESS WHEREOF, the parties hereto have signed this Agreement as of the date hereof.

ABB POWER T&D COMPANY INC.

By: _____

Title: _____


SIEMENS METERING LTD. (which          SIEMENS POWER TRANSMISSION &
includes the former metering business of    DISTRIBUTION LLC (which includes the
Landis & Gyr (Europe) AG)                former metering business of Landis & Gyr
                                         Utility
                                         Services, Inc.)



By: _____        By:_____

Title: _____      Title:_____

12

IN WITNESS WHEREOF, the parties hereto have signed this Agreement as of the date hereof.

ABB POWER T&D COMPANY INC.

By: _____

Title: Executive Vice President


SIEMENS METERING LTD. (which
includes the former metering business of
Landis & Gyr (Europe) AG)



By: _____

Title: _____

SIEMENS POWER TRANSMISSION &
DISTRIBUTION LLC (which includes the
former business of Landis & Gyr Utility
Services, Inc.


By: _____

Title: _____

12

Dec-12-00  12:12pm  From-WOODCOCK WASHBURN 32        12181933438        T-417  P 14/16  F-237

IN WITNESS WHEREOF, the parties hereto have signed this Agreement as of the date hereof.

ABB POWER T&D COMPANY INC.

By: _____

Title: _____

SIEMENS METERING LTD. (which          SIEMENS POWER TRANSMISSION &
includes the former metering business of   DISTRIBUTION LLC (which includes the
Landis & Gyr (Europe) AG)                former metering business of Landis & Gyr
                                         Utility
                                         Services, Inc.)

By: _____          By: _____

Title: President                     Title: _____


John Little
VP. Digital Devices


12

IN WITNESS WHEREOF, the parties hereto have signed this Agreement as of the date hereof.

ABB POWER T&D COMPANY INC.

By: _____

Title: _____


SIEMENS METERING LTD. (which          SIEMENS POWER TRANSMISSION &
includes the former metering business of    DISTRIBUTION LLC (which includes the
Landis & Gyr (Europe) AG)             former metering business of Landis & Gyr
                                      Utility
                                      Services, Inc.)

By: _____   By: _____

Title: _____   Title: _____ President & CEO _____
                                              10-14-98

12

# EXHIBIT D

LAW OFFICES
# WOODCOCK WASHBURN KURTZ MACKIEWICZ & NORRIS LLP
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

RICHARD E. KURTZ
JOHN J. MACKIEWICZ
DALE N. HEIST
JOHN W. CALDWELL
GARY H. LEVIN
STEVEN J. ROCCI
DIANNE B. ELDERKIN
JOHN P. DONOHUE, JR.
HENRIE D. PARKER
SUZANNE E. HILLER
LYNN B. MORREALE
MARK DiLUCA
LAURA GENOVESE MILLER
JOSEPH LUCCI
MICHAEL P. DUNNAM
MICHAEL R. STEIN ††
ALBERT J. MARCELLINO
DAVID R. BAILEY
DOREEN YATKO TRUJILLO
BARBARA L. MULLIN
KEVIN M. FLANNERY
MICHAEL P. STRAKER
DAVID A. CHERRY
LYNN A. MALINOSKI
CAMILLE M. MILLER
STEVEN B. SAMUELS
MICHAEL J. SWOPE *
MICHAEL J. BONELLA
HAROLD M. FULLMER
JOHN E. McGLYNN
JONATHAN N. WALDMAN
CHAD ZIEGLER
GWILYM J. O. ATTWELL
DAVID N. FARSIOU

PAUL K. LEGAARD
MAUREEN S. GIBBONS
STEVEN H. MEYER
THOMAS S. SMITH
PAUL B. MILGETIC
JOSEPH R. COMBO
MICHAEL K. JONES
FRANK T. CARROLL
MARK J. KOSEN
MITCHELL R. BRUNSTEIN
THOMAS E. WATSON*
ERIC M. VANCE
PETER M. ULLMAN
RICHARD B. LeBLANC †
DENISE L. MBGE
JOSEPH D. ROSSI
ROSALEEN P. MORRIS
GEORGE J. AWAD
STEVEN D. MARKOWSKI
S. MAURICE VALLA
ZHNA R. BAILEY
VINCENT J. ROCCIA
ROBIN B. OUARTIN
PATRICK J. FARLEY
BRIAN J. URBAN
DEREK D. WOOD
GREGORY L. HILLYER
STEPHEN C. TIMMINS
RICHARD G. WATKINS
ERICH M. FALKE
JANE SMITH INGLESE
SUSAN C. MURPHY
RAYMOND N. SCOTT
DAVID L. MARCUS

ONE LIBERTY PLACE – 46TH FLOOR
PHILADELPHIA, PA 19103
—
TELEPHONE (215) 568-3100
FACSIMILE (215) 568-3439
—
woodcock.com

SEATTLE OFFICE
WELLS FARGO CENTER
999 THIRD AVENUE – SUITE 1605
SEATTLE, WA 98104
TELEPHONE (206) 332-1380
FACSIMILE (206) 624-7317

VIRGIL E. WOODCOCK
(1908-1974)
—
INTELLECTUAL PROPERTY LAW
—
COUNSEL
ROBERT B. WASHBURN
NORMAN L. NORRIS
ALBERT W. PRESTON, JR.
—
OF COUNSEL
ANTHONY J. ROSSI
KATHLEEN A. MILSARK
TERENCE P. STROBAUGH
—
SCIENTIFIC ADVISORS
CHRISTINE A. GODDARD, Ph.D
ELLEN H. KLAHN, Ph.B

† NY BAR ONLY
†† ALSO WASHINGTON BAR
* RESIDENT IN SEATTLE OFFICE

March 9, 2001

e-mail address: samuels@woodcock.com
via registered mail – postage prepaid

John W. Shumar
Siemens Power Transmission & Distribution, LLC
100 Forsyth Hall Drive, Suite A
Charlotte, NC 28273

Jan van Dokkum
Siemens Power Transmission & Distribution, LLC
7000 Siemens Road
Wendell, NC 27591

Dr. Johannes Milde
Siemens Metering Ltd.
Feldstrasse 1
CH-6301 Zug

RE:     ABB/SIEMENS PATENT CROSS-LICENSE AGREEMENT

Gentlemen:

As you are aware, the Patent Cross-License Agreement of October 1, 1998 between ABB and Siemens ("the Agreement"), provides that Siemens shall pay ABB a running royalty of 2.5% of Net Sales or Lease Price of Specific Licensed Products manufactured, sold or leased by Siemens in the United States. Specific Licensed Products includes any electronic energy meters or kits or components, embodying one or more of the features listed in Paragraphs 1.6 (a) through (f) of the Agreement. As presently advised, this includes, without limitation, all S-4, Altimus and ZMC meters manufactured, sold or leased in the United States by Siemens beginning July 15, 2000 and continuing through the expiration of the last-to-expire of the ABB Licensed Patents.

ABB has reason to believe that the net sales figures used to calculate the royalty payments forwarded with Siemens' letters to ABB of December 8, 2000 , January 16,

WOODCOCK WASHBURN KURTZ MA        WICZ & NORRIS LLP

March 9, 2001
Page two


2001 and February 26, 2001 are understated.  Therefore, pursuant to paragraph 4.5 of the
Agreement, ABB hereby notifies Siemens of its intent to exercise the right to have an
independent third party conduct an annual audit of the sales records, royalty reports and
like documentation to verify the royalties due under the Agreement.  ABB proposes that
Quayle Partners of Zionsville, Indiana conduct the audit.

      Please contact us at your earliest convenience so that we can move this matter
forward expeditiously.


                                   Sincerely,

                                   Steven B. Samuels


SBS/jm

cc:  Nick Klett
     N.L. Norris
     S.J. Rocci

# EXHIBIT E

**WoodCock WashBurn**

I N T E L L E C T U A L   P R O P E R T Y   L A W

PHILADELPHIA
One Liberty Place, 46th Floor
Philadelphia, PA 19103
215-568-3100
Fax: 215-568-3439

SEATTLE
999 Third Avenue, Suite 1606
Seattle, WA 98104
206-332-1380
Fax: 206-624-7317

July 3, 2002

STEVEN B. SAMUELS
PHILADELPHIA OFFICE
samuels@woodcock.com

**VIA FACSIMILE**
Peter A. Luccarelli, Jr., Esquire
Intellectual Property Counsel
Siemens Corporation
186 Wood Avenue South
Iselin, NJ 08830

          RE:     **ABB/SIEMENS PATENT CROSS-LICENSE AGREEMENT**

Dear Peter:

          This is a follow-up to the telephone discussions that we had on Friday, June 21, 2002 and
Wednesday, July 3, 2002, in which we discussed a proposal for facilitating a resolution to the
present dispute between ABB Inc. ("ABB") and Siemens Power Transmission & Distribution
LLC and Siemens Metering Inc. (collectively "Siemens"), over the royalty payments that
Siemens has made on sales of its "S4" and "ZMC" products under the Patent Cross-License
Agreement (PCLA).

          As we discussed, the parties are interested in reaching a prompt resolution to the present
dispute, without resort to litigation, if possible.  ABB has, however, expressed concern with the
provision in Paragraph 11.2 of the PCLA that "[i]n regard to any claim by ABB concerning
royalties due under this Agreement, ABB shall initiate any litigation against Siemens on such
claim within two (2) years of the first sale within the Running Royalty Period of the product that
is the subject of the royalty dispute."  Because the Running Royalty Period began on July 15,
2000, any litigation that ABB would be required to initiate to preserve its rights would need to be
initiated by July 15, 2002.  Recognizing that the parties efforts to resolve the present dispute will
extend beyond July 15, 2002, the parties hereby agree as follows:

          1.  Within twenty (20) days of an agreement between the parties concerning the treatment
of confidential information of Siemens, Siemens will provide to ABB an initial statement
explaining Siemens' position as to why it believes that certain "S4" and "ZMC" meters sold by
Siemens do not constitute "Specific Licensed Products" under the PCLA.

WOODCOCK WASHBURN LLP
A Partnership Including Professional Corporations
www.woodcock.com



Peter A. Luccarelli, Jr., Esquire
July 3, 2002
Page 2

   2.  Upon receipt by ABB of the initial statement from Siemens, the parties agree to continue to work together to resolve the present dispute.

   3.  Siemens agrees that it will not assert that Paragraph 11.2 of the PCLA precludes ABB from recovering back royalties due on any sales of any product within the Running Royalty Period set forth in the PCLA, provided that, subject to the other provisions of the PCLA including its notice provisions, ABB initiates any litigation for recovery of such royalties within two hundred ten (210) days from the date of receipt by ABB of the initial statement from Siemens.

   Although it is ABB's desire to avoid litigation, it is understood that nothing in this letter agreement or otherwise precludes ABB from initiating litigation anytime before the end of the 210 day period set forth in paragraph 3, should ABB determine that is necessary to preserve or enforce its rights.

                              Sincerely yours,

                              Steven B. Samuels

SBS/jm


   By the signatures below, the parties hereby indicate their agreement to the terms and conditions set forth in this letter.


Siemens Power Transmission          Siemens Metering Inc.          ABB Inc.
& Distribution LLC


By: _____     By: _____     By: _____


Its: _____     Its: _____     Its: _____


Date: _____     Date: _____     Date: _____



Peter A. Lucarelli, Jr., Esquire
July 3, 2002
Page 2

2.  Upon receipt by ABB of the initial statement from Siemens, the parties agree to continue to work together to resolve the present dispute.

3.  Siemens agrees that it will not assert that Paragraph 11.2 of the PCLA precludes ABB from recovering back royalties due on any sales of any product within the Running Royalty Period set forth in the PCLA, provided that, subject to the other provisions of the PCLA including its notice provisions, ABB initiates any litigation for recovery of such royalties within two hundred ten (210) days from the date of receipt by ABB of the initial statement from Siemens.

Although it is ABB's desire to avoid litigation, it is understood that nothing in this letter agreement or otherwise precludes ABB from initiating litigation anytime before the end of the 210 day period set forth in paragraph 3, should ABB determine that is necessary to preserve or enforce its rights.

Sincerely yours,

Steven B. Samuels

SBS/jm

By the signatures below, the parties hereby indicate their agreement to the terms and conditions set forth in this letter.

Siemens Power Transmission     Siemens Metering Inc.     ABB Inc.
& Distribution LLC Inc.  7/11/02

By: _____     By: _Peter A Lucarelli_     By: _____
                         _ASSOCIATE CHIEF IP COUNSEL_
                         _SIEMENS CORPORATION_
Its: _President & CEO_    Its: _ATTORNEY_     Its: _____

Date: _4-04-02_     Date: _5 JULY 2002_     Date: _____
      _JULY 11, 2002_



Peter A. Luccarelli, Jr., Esquire
July 3, 2002
Page 2

    2. Upon receipt by ABB of the initial statement from Siemens, the parties agree to continue to work together to resolve the present dispute.

    3. Siemens agrees that it will not assert that Paragraph 11.2 of the PCLA precludes ABB from recovering back royalties due on any sales of any product within the Running Royalty Period set forth in the PCLA, provided that, subject to the other provisions of the PCLA including its notice provisions, ABB initiates any litigation for recovery of such royalties within two hundred ten (210) days from the date of receipt by ABB of the initial statement from Siemens.

    Although it is ABB's desire to avoid litigation, it is understood that nothing in this letter agreement or otherwise precludes ABB from initiating litigation anytime before the end of the 210 day period set forth in paragraph 3, should ABB determine that is necessary to preserve or enforce its rights.

    Sincerely yours,

    Steven B. Samuels

SBS/jm

    By the signatures below, the parties hereby indicate their agreement to the terms and conditions set forth in this letter.

| Siemens Power Transmission & Distribution LLC | Siemens Metering Inc. | ABB Inc. |
|---|---|---|
| By: _____ | By: _____ | By: _M̲a̲l̲ ̲J̲o̲o̲l̲y̲_ |
| Its: _____ | Its: _____ | Its: _Senior VP & GM_ |
| Date: _____ | Date: _____ | Date: _July 9, 2002_ |

# EXHIBIT F

## FULLY REDACTED

# EXHIBIT G

## FULLY REDACTED

# EXHIBIT H

## FULLY REDACTED

# EXHIBIT I

## FULLY REDACTED

# EXHIBIT J

## FULLY REDACTED

# EXHIBIT K

**Samuels, Steven B. (Woodcock Washburn)**

| | |
|---|---|
| **From:** | jbollinger@morganlewis.com |
| **Sent:** | Tuesday, January 10, 2006 5:21 PM |
| **To:** | Samuels, Steven B. (Woodcock Washburn) |
| **Cc:** | rmacchio@morganlewis.com |
| **Subject:** | RE: Elster/L+G |

We are agreeable to a one week extension to Jan 19th. Please send me a confirming letter

jim


James M. Bollinger
Morgan Lewis & Bockius
101 Park Avenue
New York, NY 10178
Jbollinger@morganlewis.com
212-309-2102



```
          "Samuels, Steven
          B. (Woodcock
          Washburn)"                                      To
          <samuels@woodcock         jbollinger@morganlewis.com
          .com>                                           cc

          01/10/06 10:55 AM                               Subject
                                    RE: Elster/L+G
```




Jim, thank you for the prompt reply. While we await Landis+Gyr's response to the
questions in my other letter, and while our consultant evaluates the previous information,
we are likely to run up against the end of our current extension - this Thursday. Please
let us know whether Landis+Gyr will agree to extend the negotiation period one additional
week to January 19? Please let me know today, if possible.

Best regards,
  Steve

Steven B. Samuels
Woodcock Washburn LLP
One Liberty Place - 46th Floor
Philadelphia, PA 19103
215-557-5969 (voice)
215-568-3439 (fax)
samuels@woodcock.com


-----Original Message-----
From: jbollinger@morganlewis.com [mailto:jbollinger@morganlewis.com]

Sent: Monday, January 09, 2006 5:44 PM
To: Samuels, Steven B. (Woodcock Washburn)
Subject: Re: Elster/L+G


steve - we have no objection to your proposed expert assisting on this matter.

Jim


James M. Bollinger
Morgan Lewis & Bockius
101 Park Avenue
New York, NY 10178
Jbollinger@morganlewis.com
212-309-2102


| "Samuels, Steven B. (Woodcock Washburn)" <samuels@woodcock.com> | jbollinger@morganlewis.com | To |
| 01/06/06 02:13 PM | | cc |
| | Elster/L+G | Subject |


Jim,

Please see the attached.

Steve

<<2006-01-06-Ltr to Bollinger-SBS.PDF>> (See attached file: 2006-01-06-Ltr to Bollinger-SBS.PDF)

DISCLAIMER
This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential.  If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.


DISCLAIMER
This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential.  If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify

2

us immediately by e-mail and delete the original message.

# EXHIBIT L

## FULLY REDACTED

# EXHIBIT M

## FULLY REDACTED

# EXHIBIT N

## FULLY REDACTED

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on February 9, 2006, I electronically filed the redacted version of Elster Electricity LLC's Motion to Enforce Settlement Agreement with the Clerk of the Court using CM/ECF, which will send electronic notification to:

Oleh V. Bilynsky, Esquire
Connolly Bove Lodge & Hutz LLP

I also certify that copies were caused to be served on February 9, 2006 upon the following in the manner indicated:

### BY FEDERAL EXPRESS

James M. Bollinger, Esquire
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060

*/s/ Julia Heaney (#3052)*
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com