IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABB POWER T&D COMPANY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 97-417-MMS |
| | ) | |
| v. | ) | |
| | ) | |
| LANDIS & GYR UTILITIES SERVICES HOLDING, INC., LANDIS & GYR UTILITIES SERVICES, INC. and ELECTROWATT AG | ) ) ) ) ) | **REDACTED** **PUBLIC VERSION** |
| Defendants. | ) | |

**LANDIS+GYR'S OPPOSITION TO ELSTER'S MOTION
TO ENFORCE SETTLEMENT AGREEMENT**

>   Rudolf E. Hutz, Bar. No. 484
>   N. Richard Powers, Bar. No. 494
>   Oleh Bilynsky, Bar. No. 3604
>   **CONNOLLY BOVE LODGE & HUTZ LLP**
>   1007 North Orange Street
>   P.O. Box 2207
>   Wilmington, Delaware  19899-2207
>
>   And
>
>   Of Counsel:
>   James M. Bollinger
>   Steven D. Underwood
>   **MORGAN, LEWIS & BOCKIUS LLP**
>   101 Park Avenue
>   New York, New York  10178
>   (212) 309-6000
>
>   Counsel for Defendant Landis+Gyr Inc.

## TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ................................................................................. 1

II.  STATEMENT OF FACTS ........................................................................................ 3

    A.   The Parties and the Previous Lawsuit ............................................................ 3

    B.   The License Agreement and Controlling Terms Therein ................................ 3

    C.   Landis+Gyr's Good Faith Efforts to Resolve This Dispute ............................. 4

        1.   The Confidential Report ........................................................................ 5

        2.   Elster's Notice of Breach ....................................................................... 5

        3.   Elster's Multiple Experts and Circular Questioning .............................. 6

III. ARGUMENT ............................................................................................................. 7

    A.   The Record Demonstrates That Landis+Gyr Has Completely
        Complied With the License Audit Provisions ................................................ 8

    B.   Elster's Last Inquiries and Second Expert Demonstrate
        Its Bad Faith .................................................................................................... 8

IV.  CONCLUSION .......................................................................................................... 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABB POWER T&D COMPANY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 97-417-MMS |
| | ) | |
| v. | ) | |
| | ) | |
| LANDIS & GYR UTILITIES SERVICES HOLDING, INC., LANDIS & GYR UTILITIES SERVICES, INC. and ELECTROWATT AG | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**LANDIS+GYR'S OPPOSITION TO ELSTER'S MOTION
TO ENFORCE SETTLEMENT AGREEMENT**

Landis+Gyr Inc. ("Landis+Gyr") hereby opposes the Motion to Enforce Settlement Agreement ("Motion") filed by Elster Electricity LLC ("Elster").

**I.    PRELIMINARY STATEMENT**

The authority for this Court's review of the disputes raised in Elster's Motion stems from a License Agreement[1] settling this long dormant litigation. Elster's Motion, however, violates both the spirit and letter of this License Agreement and should be denied (and dismissed) on both procedural and substantive grounds.

**Procedurally**, Elster's Motion violates the express language of the License Agreement, where the parties specifically agreed that "the sole and exclusive remedy" for any alleged License Agreement dispute is a <u>separate</u> lawsuit filed in this Court:

---

[1] The Patent Cross-License Agreement ("License Agreement") is attached as Exh. A hereto.

    12.1    [Elster's] sole and exclusive remedy for claims pertaining to royalties due hereunder is a suit for recovery of the monetary amounts specified in Section 11.2.

    12.2    [Elster's] and [Landis+Gyr's] sole and exclusive remedy for any other alleged breach of this Agreement shall be a suit for recovery of such actual damages as are caused by such breach.

License Agreement, p. 10.

The parties agreed to the foregoing "exclusive" mechanism for the resolution of future disputes, certainly in view of the fairness and restraint a new suit provides in terms of, *inter alia*, identification and framing of the dispute, bilateral discovery, and selection of fact finder – all available only when a new suit is filed.

Because the terms of this License Agreement were included in the 1998 Court Order dismissing Elster's case <u>with prejudice</u>, the above remedy provision has the force of a court order that requires Elster to bring a lawsuit, not a unilateral motion.

**On the merits**, Elster's accusations that Landis+Gyr has violated the "audit" provisions of the License Agreement are utterly baseless. These accusations of alleged breach by non-disclosure are presented on an incomplete and contorted record, as Elster has intentionally omitted key facts contrary to its claim. When the full record is considered, Landis+Gyr's responses were proper and its compliance with the License Agreement is uncontroverted, as demonstrated by the following core facts:

- Landis+Gyr provided a comprehensive, highly confidential report (the "Confidential Report") in January 2005 detailing all aspects of its product design relevant to the License Agreement.

- Landis+Gyr initially provided Elster seven months to review the Confidential Report, and thereafter extended the deadline six more times giving Elster almost a full year for its review.

- Landis+Gyr fully and completely responded to each follow-up inquiry Elster made regarding the Confidential Report.

- Landis+Gyr authorized Elster's disclosure of the Confidential Report (and supplements) to a first "expert" months ago, and then authorized this same review by a second "expert," as requested by Elster.

- After more than a year, dozens of letters, and two experts, Elster has no outstanding request for further information from Landis+Gyr.

Landis+Gyr – following the terms of the License Agreement – has filed suit against Elster for its breach of the License Agreement and a declaration of rights thereunder. (*See* Exh. B). As the matter is now set to be resolved – fairly and bilaterally – in that action, the Motion should be dismissed.

## II.     STATEMENT OF FACTS

### A.     The Parties and the Previous Lawsuit

Landis+Gyr and Elster both manufacture and sell electricity meters in the United States. These electricity meters are competitively sold by both Landis+Gyr and Elster to utilities and used by the utilities to monitor electricity used by their customers.

In 1997, the predecessors of Landis+Gyr and Elster brought patent infringement actions against each other's electricity meters. These claims were eventually settled in 1998 by a cross license agreement and Elster's infringement claims were dismissed with prejudice. In the Order dismissing the dispute, the Court retained jurisdiction and incorporated into its Order the terms of the License Agreement executed between the parties.

### B.     The License Agreement and Controlling Terms Therein

The License Agreement includes numerous provisions, of which three are germane to the current dispute.

3

      1.      Section 4 specifies the royalty rate and section 4.5 provides for an "annual audit of the sales records, royalty reports and like documentation" for review by a mutually acceptable third party.

      2.      Section 11 specifies that notice of a claim of breach must be presented 30 days before any suit is filed (*i.e.*, before the "commencement of litigation").

      3.      Section 12 specifies that Elster's "sole and exclusive remedy for claims to royalties due hereunder is a suit for recovery …" and further, the parties "sole and exclusive remedy for claims for any other alleged breach of this agreement shall be a suit for recovery of such actual damages." (*See* Exh. A, p. 10).

The License Agreement identified six (6) categories of "Licensed Products" (pp. 2-3). Royalties are due for meters that fall within these six categories. Over the relevant time, Landis+Gyr has paid all royalties due to Elster under the License Agreement.

      **C.**      **Landis+Gyr's Good Faith Efforts to Resolve This Dispute**

In response to Elster's complaints that Landis+Gyr wasn't paying all royalties due under the License Agreement, Landis+Gyr authorized an "audit" of its sales and related records. This was done in full and complete compliance with Section 4.6 of the License Agreement.[2]

Elster later sought technical (and highly confidential) details regarding several meter products sold by Landis+Gyr. Recognizing that the current provisions of the License Agreement did not allow for (or require) such disclosures, the parties entered into a separate Disclosure Agreement. (*See* Exh. C.) In this arrangement, Landis+Gyr agreed to provide a Confidential

---

[2]    Contrary to Elster's suggestion, it is our understanding that the Annual Audit was done by KPMG (a third party financial auditor) in 2002. Elster has not objected to this evaluation.

4

Report to Elster regarding the meters. Elster would then have seven months ("210 days") to complete its investigation.

### 1.     The Confidential Report

On January 21, 2005 – more than a year ago – Landis+Gyr provided a comprehensive report (spanning twelve single-spaced pages) fully explaining the technical operation of its meters, presented in sufficient detail to conclude that <u>no</u> royalties were due on the S4 and ZMC meters. While Elster made subsequent inquiries on the Confidential Report, Elster has never objected to its completeness.

Indeed, as depicted in Table I below, each time Elster requested further details, Landis+Gyr timely responded. In addition, each time Elster asked for more time, Landis+Gyr complied, and granted a further extension.

**TABLE I**

| Elster Requests Date | Request Type | Landis+Gyr Response Date | Landis+Gyr's Response |
|---|---|---|---|
| 4/22/2005 | More information | 5/25/2005 | Information given |
| 9/19/2005 | More information | 9/21/2005 | Information given |
| 9/22/2005 | More time | 9/26/2005 | Time given |
| 10/18/2005 | More information | 10/26/2005 | Information given |
| around 11/18/2005 | More time | around 11/18/2005 | Time given |
| 11/22/05 | More information | 12/1/2005 | Information given |
| 12/16/2005 | More time | 12/6/2005 | Time given |
| 12/13/2005 | More time | 12/14/2005 | Time given |
| 1/6/2006 | More information | 1/17/2005 | Information given |
| 1/10/2006 | More time | 1/10/2005 | Time given |
| 1/17/2006 | More time | 1/18/2006 | No more time given |

### 2.     Elster's Notice of Breach

At the prescribed "30 days before filing," Elster gave Notice of its belief that Landis+Gyr had breached the License Agreement. Importantly, the Noticed breach was limited to one of the six categories (category 2, defined in § 1.6(b)); the disputed category deals with    REDACTED

5

The remaining five categories, pursuant to Landis+Gyr disclosures, were found to be free from any claim by Elster. (*See* Exh. D).

### 3. Elster's Multiple Experts and Circular Questioning

Almost ten months after receipt of the Confidential Report, Elster for the first time requested permission to share Landis+Gyr confidential information with a retained technical expert. Landis+Gyr agreed, and the Confidential Information with supplements presumably was provided to Professor Roberge, a professor of electrical engineering at MIT (CV attached as Exh. E). Apparently this first expert concluded that no royalty was due and that Landis+Gyr was correct. We suggest this was his conclusion because a mere two months later, Elster requested permission to share this same information with a second expert. Again, Landis+Gyr, with some hesitancy in view of the obvious "expert shopping" Elster was engaging in, agreed to the new expert (CV attached as Exh. F). Presumably this new expert now has completed his review and again, there is no indication that he has reached a conclusion that is different from the first expert – that is, Landis+Gyr owes no royalties.

In addition to the above, Elster's requests for information began to circle back on subjects that were previously resolved months earlier – in an apparent effort by Elster to unearth some disputable point on the royalties. And, while Elster initially agreed to explain its position regarding Elster's claim that royalties were due (Exh. G), it has not done so in response to Landis+Gyr's latest detailed submission on the A/D converter issue.

It was at this juncture that Landis+Gyr concluded that Elster was no longer pursuing the matter in good faith and further informal efforts to resolve this dispute would be fruitless. Indeed, Elster filed the Motion notwithstanding the fact that Landis+Gyr had provided Elster six separate highly confidential submissions, five extensions of time, the use of two experts and over

12 months to review and assess its position. And, of course, as it stands today, there is not a single pending Elster question unanswered by Landis+Gyr.

## III. ARGUMENT

The law is clear. Settlement and associated license agreements are contracts that are legally enforceable by a lawsuit claiming breach. *See Williams v. Metzler*, 132 F.3d 937, 946 (3d Cir. 1997) ("Basic contract principles apply to settlement agreements."); *Conley v. Dan-Webforming Int'l A/S, Ltd.*, 1992 U.S. Dist. LEXIS 20251 *1, *37-*38 (D. Del. 1992) ("the language of the Agreement must be the starting point"); *Silicon Image, Inc. v. Genesis Microchip Inc.*, 395 F.3d 1358, 1363 (Fed. Cir. 2005) ("court cannot alter the terms of the settlement agreement by judicial decree without the parties' consent. To hold otherwise would deny the parties the benefit of their bargain.") In such an action, the Court is empowered to enforce the contract, award damages, and to consider typical contract defenses. *See Hobbs & Co. v. American Investors Management, Inc.*, 576 F.2d 29, 37 n.21 (3d Cir. 1978) (citing *Walther & Cie v. U.S. Fidelity & Guaranty Co.*, 397 F. Supp. 937, 944 (M.D. Pa 1975).

In their License Agreement, the parties specifically defined the sole and exclusive remedy for an allegation of breach: a lawsuit filed in the Delaware District Court for breach of contract – thus providing each party the full rights afforded in such a forum, including all contract defenses, affirmative defenses, compulsory counterclaims, and the right to a jury determination of the dispute.

Ignoring the express provisions of Sections 12.1 and 12.2 of the License Agreement, Elster has filed its improper Motion seeking to subvert the process to a unilateral examination of Landis+Gyr's conduct. Because the parties to the Agreement specifically rejected this form of inquiry, the Court should dismiss Elster's Motion.

7

### A. The Record Demonstrates That Landis+Gyr Has Completely Complied With the License Audit Provisions

The License Agreement audit provisions have been completely followed by Landis+Gyr – all records were properly maintained and all records that were subject to inspection were provided to Elster in the 2002 audit.

Recognizing that certain technical details were not embraced by the audit provisions of the License Agreement, Elster and Landis+Gyr reached a separate Disclosure Agreement in July 2002 to govern this review.  (*See* Exh. C).

Landis+Gyr has fully complied with both the License Agreement terms and the Disclosure Agreement.  Indeed, it's clear that Landis+Gyr has gone far beyond its reasonable obligations and provided Elster more than enough information to ascertain whether a breach has occurred.

### B. Elster's Last Inquiries and Second Expert Demonstrate Its Bad Faith

As noted above, Elster's last inquiry was, in part, directed to matters previously resolved and acknowledged.  Specifically, Elster questioned the use of  REDACTED  in certain meters by Landis+Gyr long after Landis+Gyr had demonstrated to Elster's apparent satisfaction that these meters were outside the license terms on that part.  By circling back over ground long since resolved, Elster demonstrated its frustration that no license fees were past due and that perhaps by merely prolonging the dispute, a small financial recovery could be extracted from Landis+Gyr – just to end it.  This, coupled with Elster's firing of its first expert and "shopping" for a second, led Landis+Gyr to believe that Elster's continued informal investigation was not directed towards resolving the matter properly – but, in fact, Elster was attempting to find any basis to prolong the matter.

Once these tactics by Elster became clear, Landis+Gyr declined to participate further in the prolonged unilateral inquiries by Elster. This response was proper and fully within Landis+Gyr's rights under the License Agreement. Indeed, if Elster believed Landis+Gyr was in violation of the License Agreement, it had as its "sole and exclusive" remedy, a suit for breach of contract. Elster, perhaps recognizing the weakness of such a claim, declined to file suit.

## IV.   CONCLUSION

For the reasons presented above, the Motion should be denied and dismissed.

Respectfully submitted,

Dated: February 6, 2006                         _/s/_Oleh Bilynsky_____
Redacted Filing: February 13, 2006              Rudolf E. Hutz, Bar. No. 484
                                                N. Richard Powers, Bar. No. 494
                                                Oleh Bilynsky, Bar. No. 3604
                                                **CONNOLLY BOVE LODGE & HUTZ LLP**
                                                1007 North Orange Street
                                                P.O. Box 2207
                                                Wilmington, Delaware   19899-2207

                                                        And

                                                Of Counsel:
                                                James M. Bollinger
                                                Steven D. Underwood
                                                **MORGAN, LEWIS & BOCKIUS LLP**
                                                101 Park Avenue
                                                New York, New York   10178
                                                (212) 309-6000

                                                Counsel for Defendant Landis+Gyr Inc.

## CERTIFICATE OF SERVICE

I do hereby certify that on the 6th day of February, 2006, a true and correct copy of the foregoing **LANDIS+GYR'S OPPOSITION TO ELSTER'S MOTION TO ENFORCE SETTLEMENT AGREEMENT** was served by hand delivery on the below counsel:

_____

Jack B. Blumenfeld
Julia Heaney
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABB POWER T&D COMPANY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 97-417-MMS |
| | ) | |
| v. | ) | |
| | ) | |
| LANDIS & GYR UTILITIES SERVICES HOLDING, INC., LANDIS & GYR UTILITIES SERVICES, INC. and ELECTROWATT AG | ) ) ) ) ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER**

Upon consideration of ELSTER'S MOTION TO ENFORCE SETTLEMENT AGREEMENT, it is hereby ORDERED that said MOTION is DENIED in its entirety.

**SO ORDERED** this _____ day of _____, 2006

_____
United States District Judge